# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SANDRA TORRES, and all
others similarly situated under
*29 U.S.C. § 216(b),*

      Plaintiff(s),

v.                                                    Civil Action File Number:

EVERETT FINANCIAL, INC.,
d/b/a SUPREME LENDING,
a/k/a SUPREME LENDING SOUTHEAST
a foreign profit corporation,
PATRICK FLOOD, individually,
and CHRISTOPHER WOODY, Individually,

      Defendants.

---

## COMPLAINT

Plaintiff, SANDRA TORRES ("Plaintiff"), pursuant to the Fair Labor

Standards Act ("FLSA"), *29 U.S.C. §§ 201-216*, files this Complaint against

Defendants, EVERETT FINANCIAL, INC., d/b/a SUPREME LENDING

(hereinafter referred to as "Supreme Lending"), PATRICK FLOOD ("Mr. Flood")

individually, and CHRISTOPHER WOODY ("Mr. Woody"), (collectively referred

to hereinafter as "Defendants"), on behalf of herself, and all others similarly situated, and alleges:

## INTRODUCTION

1. Defendants have unlawfully deprived Plaintiff, and all others similarly situated, of overtime compensation during the course of their employment.  This is an action arising under the FLSA pursuant to *29 U.S.C. §§ 201-216*, to recover all wages owed to Plaintiff, and all others similarly situated.

## PARTIES

2. During all times material hereto, Plaintiff was, and currently remains, a resident of Gwinnett County, Georgia, over the age of 18 years, and otherwise *sui juris.*

3. During all times material hereto, Defendant, EVERETT FINANCIAL d/b/a SUPREME LENDING, ("Supreme Lending") is a foreign corporation authorized to do business in the State of Georgia, with its principal place of business at 14801 Quorum Drive, Suite 300, Dallas, Texas, 75254. SUPREME LENDING also maintains a business location within Fulton County, Georgia, within the jurisdiction and venue of this Honorable Court.  Moreover, SUPREME LENDING's Operations Center for the Southeast Region of the United States is located at 1000 Mansell Exchange West, Suite 310, Alpharetta, Georgia, 30022, also within the jurisdiction of this Honorable Court.

4. Upon information and belief, at all times material hereto Defendant, PATRICK FLOOD, was a resident of the Northern District of Georgia and was the Regional Operating Partner of the SUPREME LENDING within Fulton County, Georgia.

5. At all times material hereto, Defendant, PATRICK FLOOD, was over the age of 18 years, a managing member, and operator of SUPREME LENDING and was vested with ultimate control and day-to-day decision-making authority to hire, fire, and discipline, any and all SUPREME LENDING employees, including Plaintiff.

6. During all times material hereto, Defendant, PATRICK FLOOD, also exercised day-to-day control and decision-making authority over the payroll practices of Defendant, SUPREME LENDING.

7. Defendant, PATRICK FLOOD, during all times material hereto, was aware of the corporate Defendants' payroll practices and approved and/or implemented such practices.

8. During all times material hereto, Defendant, CHRISTOPHER WOODY, was a resident of the Northern District of Georgia and over the age of 18 years.

9. Defendant, CHRISTOPHER WOODY was at all times material hereto a Closing Manager and Plaintiff's Direct Supervisor.

10. Defendant, CHRISTOPHER WOODY, had the authority to hire, fire, and discipline the corporate Defendant's employees, including Plaintiff, during all times material hereto.

11. Defendant, CHRISTOPHER WOODY, was at all times material hereto knowledgeable about Defendants' payroll practices.

12. Defendant, SUPREME LENDING, was Plaintiff's FLSA employer, as that term is defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

13. Defendant, PATRICK FLOOD, was Plaintiff's FLSA employer, as that term is defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

14. Defendant, CHRISTOPHER WOODY was Plaintiff's FLSA employer, as that term is defined by *29 U.S.C. § 203(d),* during all times pertinent to the allegations herein.

## JURISDICTION AND VENUE

15. All acts and omissions giving rise to this dispute took place within Fulton County, Georgia.  Jurisdiction is therefore proper within the Northern District of Georgia pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

16. More specifically, Defendant, SUPREME LENDING, regularly transacts business in Fulton County, Georgia, and maintains its Operations Center for the

Southeast Region of the United States in Fulton County, Georgia, thereby establishing jurisdiction before this Honorable Court pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

17. Upon information and belief, at all material times hereto, PATRICK FLOOD and CHRISTOPHER WOODY were residents of Georgia during all time pertinent hereto, and the corporate Defendant engaged in business in this judicial district.

18. Venue is therefore proper within the Northern District of Georgia pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. § 1391(b)*.

## GENERAL ALLEGATIONS

19. Defendant, SUPREME LENDING, is a national mortgage lender that "has hundreds of branches nationwide and is licensed in all 50 states." *See* http://www.supremesouth.com/about-us/.

20. Supreme Lending Southeast's website further claims it produced over $800 million in loans in the year 2014 alone. *Id.*

21. Defendant, EVERETT FINANCIAL, INC. d/b/a SUPREME LENDING, incorporated as a foreign corporation in the State of Georgia on September 23, 2003.[1]

---

[1] In 2012, Supreme Lending's Southern Region was born. *See* http://www.supremesouth.com/about-us; *see, also,* https://ecorp.sos.ga.gov/BusinessSearch/BusinessFilings.

22. SUPREME LENDING'S Southeast Region is comprised of nine (9) offices in Georgia, Florida, and North Carolina.  *See www.linkedin.com/company/supreme-lending-southeast/.*

23. SUPREME LENDING'S Southeast Region operates independently with processing, underwriting, closing, and funding, and its operations are based in Alpharetta, Georgia.  *See https://www.linkedin.com/company/supreme-lending-southeast/.*

24. Upon information and belief Defendants employ hundreds of other individuals throughout the Southeast Region similarly situated as the Plaintiff.

**FLSA Coverage**

25. During all times material hereto, SUPREME LENDING was covered under the FLSA through enterprise coverage, as SUPREME LENDING was engaged in interstate commerce by virtue of the fact that its business activities involved those to which the FLSA applies.  More specifically, during all times material hereto, SUPREME LENDING employed at least two (2) or more employees who regularly handled goods and/or materials on a constant and/or continuous basis that traveled across state lines, including, but not limited to the following: cellular telephones, computer equipment, paper goods, office supplies, pens, office chairs, printers, and other office materials.

26. During all times material hereto, Defendant SUPREME LENDING employed two (2) or more employees that were engaged in interstate commerce as licensed mortgage loan specialists, loan officer assistants, production support specialists, mortgage lenders, and mortgage loan originators that processed title across state lines, verified appraisals across state lines, sent closing disclosures to clients across state lines, and otherwise communicated through instrumentalities of commerce with borrowers from states other than Georgia on a regular and recurrent basis.

27. Upon information and belief, Defendant SUPREME LENDING grossed or did business in excess of $500,000.00 in 2015, 2016, and 2017, and is expected to gross in excess of $500,000.00 in 2018.

28. Upon information and belief, Defendant SUPREME LENDING grossed or did business in excess of $125,000.00 in the first quarter of 2018, and is expected to gross in excess of $125,000.00 in the second quarter of 2018.

29. Plaintiff's work for all Defendants was actually in, or so closely related to the movement of commerce while she worked for Defendants, that Plaintiff is covered under the FLSA through individual coverage, as Plaintiff regularly and recurrently used the instrumentalities of interstate commerce. More specifically, Plaintiff, and all others similarly situated, regularly and recurrently engaged in

using the instrumentalities of commerce, including landline telephones, cellular mobile phones, and other electronic devices, to send and receive invoices and communications across state lines, and to send and receive payment and interest for the sale of mortgages.

30. During all times pertinent to her employment, Plaintiff was required, on a daily basis and as an integral function of her work, to make calls to clients in other states and to conduct transactions with borrowers in other states. Furthermore, Plaintiff regularly and recurrently used the instrumentalities of interstate commerce in assisting borrowers outside of Georgia in their procurement of mortgages.

### Plaintiff's Work for Defendants

31. On November 3, 2016, Plaintiff signed and returned an Offer Letter to work for Defendants which set forth the initial terms for Plaintiff's employment.

32. The Offer Letter Dated November 3, 2016 specified that Plaintiff would receive an hourly base rate of $16.83 per hour and that she would receive paychecks on the 15th and last day of each month.

33. On or about November 14, 2016, Plaintiff began working as a Loan Servicing Specialist, and was given the official title "*Mortgage Loan Specialist.*"

34. On July 12, 2017, Plaintiff signed a document titled "*Compensation Agreement – Loan Officer.*" However, notwithstanding this title on the document she signed, Plaintiff *actually* worked as a Loan Officer Assistant and Production Support Specialist, which required her to perform non-exempt duties and therefore rendered Plaintiff a non-exempt employee within the meaning of the FLSA.

35. During all pertinent times to her employment, the individual and corporate Defendants controlled the day-to-day duties, responsibilities, and assignments of Plaintiff, and all other similarly situated individuals.

36. After hiring Plaintiff as a non-exempt employee, Defendants regularly supervised Plaintiff, and similarly situated employees, while they were performing their work for Defendants.

37. Defendant SUPREME LENDING, through the actions of Mr. Flood and Mr. Woody, knew that Plaintiff was working in excess of forty (40) hours per week but intentionally refused to pay Plaintiff the proper overtime rate of one-and-a-half times the regular hourly rate, and incorrectly misled Plaintiff about overtime requirements, and approved the unlawful treatment of Plaintiff during all material times of Plaintiff's employment

38. The Compensation Agreement, dated July 12, 2017, provided that Plaintiff would receive wages on an hourly basis **at the greater of**: (i) $17.31 (ii) applicable state

minimum wage; or (iii) federal minimum wage. The same agreement prescribed that "Employees shall be paid at a rate of one-and-a-half times Employee's regular rate of pay for any hours worked over forty (40) in a week."

39. During all times material hereto, Defendants adopted a company-wide policy which required Plaintiff and similarly situated employees to regularly work in excess of forty (40) hours during any given work week.

40. Every work day, Defendants improperly required Plaintiff, and all other similarly situated employees, to work during their lunch breaks, yet required them to clock-out of work during their lunch breaks for at least one (1) hour.

41. Furthermore, Mr. Woody and Mr. Flood, during all material times hereto, were aware of Defendants' payroll practices, and required employees to clock out during lunch but nevertheless required employees to continue to work on behalf of Defendants and were complicit with the implementation of practices that violated Federal Wage Law.

42. Plaintiff and all similarly situated employees were paid on an hourly basis but did not receive overtime compensation in the amount of one-and-a-half times their regular rate of pay for work over forty (40) hours per week.

**Plaintiff's Statement of Claim for November 14, 2016, through June 30, 2017**

43. During Plaintiff's employment from November 14, 2016 through June 30, 2017, Plaintiff worked an average of fifty-four (54) hours per week for Defendants and was paid an average of $16.83 per hour but was not paid for any hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiff therefore claims the time and a half overtime rate for each hour worked in excess of forty hours (40) per week.

44. During this time period, Plaintiff worked an average of fourteen (14) hours per week for which she was not compensated at the proper overtime rate of $25.25 per hour.  During this time period, Plaintiff worked fourteen (14) overtime hours for thirty-two (32) weeks and is therefore entitled to damages in the amount of $11,312.00.

45. However, Defendants' actions during this time period were willful and/or intentional and Plaintiff is therefore entitled to liquidated damages in the amount of an additional $11,312.00.

46. In total, during this time period, Plaintiff seeks damages in the amount of $22,624.00.

### Plaintiff's Statement of Claim for July 1, 2017, through May 18, 2018

47. During Plaintiff's employment from July 1, 2017, through May 18, 2018, Plaintiff worked an average of fifty-four (54) hours a week for Defendants and

was paid an average of $17.31 per hour but was not paid for any hours worked in excess of forty (40) hours per week as required by the Fair Labor Standards Act. Plaintiff therefore claims the time and a half overtime rate for each hour worked above 40 a week.

48. During this time period, Plaintiff worked an average of fourteen (14) hours per week for which she was not compensated at the proper overtime rate of $25.96 per hour.  During this time period, Plaintiff worked fourteen (14) overtime hours for forty-six (46) weeks and is therefore entitled to damages in the amount of $16,718.24.

49. However, Defendants' actions during this time period were willful and/or intentional and Plaintiff is therefore entitled to liquidated damages in the amount of an additional $16,718.24.

50. In total, during this particular time period, Plaintiff is entitled to total damages in the amount of $33,436.48.

51. Plaintiff's grand total amount of damages sought in this case from the first and second time periods equals $56,060.48.

## CLASS ALLEGATIONS

52. Plaintiff, SANDRA TORRES, seeks each class members' rightful and proper overtime wages, which would be time-and-a-half not paid for all hours over forty

(40) actually worked in each workweek within the past three (3) years, an equal amount in liquidated damages, judgment, attorney's fees and costs.

53. Defendant, SUPREME LENDING, employs and has employed within the past three (3) years similarly situated Mortgage Loan Specialists, Loan Servicing Specialists, Loan Officers, Loan Officer Assistants, or Production Support Specialists throughout Florida, Georgia, and North Carolina.

54. Defendant, SUPREME LENDING, uniformly treats and classifies its Mortgage Loan Specialists, Loan Servicing Specialists, Loan Officers, Loan Officer Assistants, or Production Support Specialists as employees in its officers throughout Florida, Georgia, and North Carolina as it relates to wages, overtime, and underreporting of hours worked.

55. Defendants' failure to compensate employees for all overtime wages as required by the FLSA results from a pay policy or practice of failure to assure payment of overtime in accordance with the FLSA. This policy or practice was applicable to Plaintiff and the class members. Application of this policy or practice does not depend on the personal circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of overtime for hours over forty (40) to Plaintiff applies to all class members.

56. Accordingly, the class members are properly defined as: all employees who worked for Defendants as Mortgage Loan Specialists, Loan Servicing Specialists, Loan Officers, Loan Officer Assistants, or Production Support Specialists during anytime within the three (3) years prior to the filing of this Complaint, who assisted in the procurement of mortgages in SUPREME LENDING's branches located within Georgia, Florida, and/or North Carolina who were not paid for any or all overtime worked at the correct rate as required under the FLSA.

57. At all times material hereto, the unlawful conduct described in the foregoing allegations was intentionally and willfully enacted by Mr. Flood and Mr. Woody who authorized and implemented the above unlawful practices and/or ratified the actions thereafter in order to enhance corporate profitability and reduce labor costs.[2]

58. As a direct result of Defendants' intentional and/or willful violation of the FLSA, Plaintiff suffered damages and had to retain the services of the undersigned

---

[2] SUPREME LENDING has previously been sued for violating the FLSA in different parts of the country. *See, e.g.,* Arrington v. Everett Financial, Inc. d/b/a Supreme Lending, 2015 WL 2401481 (W.D. Texas May 20, 2015).  Accordingly, Defendants knew, or should have known, of their obligations to comply with requirements set forth within the FLSA.

counsel to exercise her rights and is therefore entitled to recover her reasonable

attorney's fees and costs incurred.

## COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS
### *29 U.S.C. § 207*
**(Against All Defendants)**

59. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 58, as though set

forth fully herein.

60. Pursuant to *29 U.S.C. § 207(a),* "if an employer employs an employee for more

than 40 hours in any work week, the employer must compensate the employee

for hours in excess of 40 at the rate of at least one and one-half times the

employee's regular rate…"

61. During all times pertinent to Plaintiff's employment, Defendants, PATRICK

FLOOD, CHRISTOPHER WOODY and SUPREME LENDING treated

Plaintiff, and similarly situated individuals, as non-exempt, hourly employees

under the FLSA, and were on notice of the hours actually worked by Plaintiff,

and all others similarly situated.

62. During Plaintiff's employment with the Defendants from November 14, 2016 to

May 18, 2018, Plaintiff was required to work in excess of forthy hours per week

and was **frequently** denied compensation for overtime work at time-and-a-half

her regular hourly rate.

63. At all times material hereto, Plaintiff and all others similarly situated were required to clock-out for a one (1) hour lunch break, but were also required to continue to work.

64. During their employment with the Defendants, Plaintiff and all others similarly situated were routinely required to complete work at home but were told not to record hours worked from home.  The work performed from Plaintiff's home benefited Plaintiff's employers and Plaintiff received no compensation whatsoever for any of the work she performed from home.

65. Defendant, SUPREME LENDING, was specifically aware of the number of hours Plaintiff, and all others similarly situated, were working, and Defendant's failure, through today's date, to pay amounts owed pursuant to the Fair Labor Standards Act, is willful and intentional.  Defendant, SUPREME LENDING, knew (or should have known) of the overtime wage requirements of the FLSA and either intentionally avoided or recklessly failed to investigate proper payroll practices as they relate to the law.

66. Defendant, CHRISTOPHER WOODY, was specifically aware of the number of hours Plaintiff, and all others similarly situated, were working, and Defendant's failure, through day's date, to pay amounts owed pursuant to the Fair Labor Standards Act, is willful and intentional.  Defendant, CHRISTOPHER WOODY,

knew (or should have known) of the overtime wage requirements of the FLSA and either intentionally avoided or reckless failed to investigate proper payroll practices as they relate to the law.

67. Defendant, PATRICK FLOOD, was specifically aware of the number of hours Plaintiff, and all others similarly situated, were working, and Defendant's failure, through today's date, to pay amounts owed pursuant to the Fair Labor Standards Act, is willful and intentional.  Defendant, PATRICK FLOOD, knew (or should have known) of the overtime wage requirements of the FLSA and either intentionally avoided or recklessly failed to investigate proper payroll practices as they relate to the law.

68. Defendants benefitted from the work performed off the clock by Plaintiff, and all others similarly situated, as well as the work these employees were instructed to complete at their home.

69. During all time periods pertinent hereto, Plaintiff worked an average of at least fifty-four (54) hours per week and is therefore entitled to recover overtime for at least fourteen (14) hours per week for the seventy-nine (79) weeks that Plaintiff was employed by Defendants.

70. The amount set forth above constitutes a good-faith estimate of amounts owed to Plaintiff based upon documentation in Plaintiff's possession and her own personal recollection.

71. Plaintiff is further entitled to all reasonable attorney's fees and litigation costs from the Defendants, jointly and severally, pursuant to the FLSA, with all amounts set forth hereinabove to be proven at trial, in a trial by jury, and for entry of judgment for such other amounts as this Court deems just and equitable.

WHEREFORE, Plaintiff, SANDRA TORRES, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, EVERETT FINANCIAL, INC. d/b/a SUPREME LENDING, PATRICK FLOOD, individually, and CHRISTOPHER WOODY, individually, and award Plaintiff: (a) double damages for overtime pay under the Fair Labor Standards Act to be paid by the Defendants, jointly and severally; (b) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court may deem just and equitable under the circumstances.

## COUNT II – BREACH OF CONTRACT
### (Against Defendant Supreme Lending)

72. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 71 above, as though set forth fully herein.

73. Plaintiff and Defendant Supreme Lending entered into a valid compensation agreement with Plaintiff on or about July 12, 2017.

74. Through this valid compensation agreement, Defendant SUPREME LENDING agreed to compensate Plaintiff at a rate of $17.31 per hour, and to compensate Plaintiff at the rate of one -and-a-half times this regular hourly rate for any hours Plaintiff worked in excess of forty (40) per week.

75. Plaintiff performed the job duties in a satisfactory manner and in accordance with the agreement with Defendant SUPREME LENDING.

76. All conditions precedent, if any, have been met prior to the filing of this Complaint.

77. On one or more occasions, during Plaintiff's employment with Defendant SUPREME LENDING, Defendant SUPREME LENDING failed to pay Plaintiff compensation in accordance with the agreement as Defendant SUPREME LENDING failed to compensate Plaintiff for any or all hours worked in excess of 40 (forty) hours per work week at the rate of one-and-a-half times her regular hourly rate.

78. Defendant SUPREME LENDING's failure to pay Plaintiff's overtime compensation constitutes a material breach of the agreement.

79. Defendant SUPREME LENDING's material reach of the agreement caused, and continues to cause, harm to Plaintiff in the form of lost wages.

80. As a result of the unlawful acts of Defendant SUPREME LENDING, Plaintiff has been deprived of compensation and is entitled to the recovery of such amounts.

WHEREFORE, Plaintiff, SANDRA TORRES, by and though her attorneys, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants for a sum that will properly, adequately and completely compensate Plaintiff for the nature, extent and duration of Plaintiff's damages, the costs of this action, and reasonable attorneys' fees, as follows:

A. Declare and find that all DEFENDANTS committed one or more of the following acts:

i. Violated provisions of the FLSA by failing to pay overtime wages to Plaintiff; and

ii. Willfully violated overtime provisions of the FLSA

B. Declare and find that Defendant SUPREME LENDING materially breached its agreement with Plaintiff, and that Plaintiff suffered damages as a result;

C. Award compensatory damages in an amount to be determined at trial.

D. Award liquidated damages under the FLSA on all compensation accruing from the date such amounts were due;

E. Award all costs and reasonable attorneys' fees incurred in prosecuting this claim;

F. For such further relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, SANDRA TORRES, hereby requests and demands a trial by jury on all appropriate claims.

Dated this 9th day of July, 2018.

Respectfully Submitted,

**GREGORY, DOYLE, CALHOUN & ROGERS, LLC**

49 Atlanta St SE,
Marietta, Georgia, 30060
Phone: (770) 422-1776
*Counsel for Plaintiff, Sandra Torres*

By: */s Charles Bachman, Jr.*
CHARLES BACHMAN, ESQUIRE
Georgia Bar No. 030545
*Cbachman@gregorydoylefirm.com*
JOSEPH SHELLEY, ESQUIRE
Georgia Bar No. 140034
jshelley@gregorydoylefirm.com
dwhitefield@gregorydoylefirm.com